UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELIZABETH H. WALES<br><br>    Plaintiff<br><br>v.<br><br>INDYMAC MORTGAGE SERVICES,<br>a division of ONEWEST BANK, FSB,<br><br>    Defendant | Case No. 1:11-cv-10664 |

**PLAINTIFF'S EMERGENCY MOTION FOR
TEMPORARY RESTRINING ORDER**

**I. Summary**

Foreclosure of the Plaintiff's home is scheduled for Tuesday, April 19, 2011 at 9:00 a.m. The sale is wrongful because Plaintiff was not considered for a loan modification under the Home Affordable Modification Program despite numerous applications over the last year. The Plainitff has have sufficient income to resume mortgage payments. The foreclosure violates HAMP and the independent obligation that Defendant undertook when it solicited her for a loan modification, entitling her to injunctive relief preventing the foreclosure sale.

**II. Standard for Injunctive Relief**

The First Circuit adheres to a "watertight compartment" doctrine and generally requires an affirmative showing on each element. <u>Air Line Pilots Ass'n, Intern. v. Guilford Transp. Industries, Inc.</u>, 399 F.3d 89, 95 (1st Cir. 2005). Whether injunctive relief should issue usually depends upon a medley of four factors: (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined

as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest. Id.

### III. Argument

A.  **First Factor: Likelihood of Success on the Merits**

   1. **Negligence**

Negligence consists of four elements: (1) a legal duty owed by defendant to plaintiff; (2) the breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury. Jorgensen v. Massachusetts Port Auth., 905 F.2d 515, 522 (1st Cir. 1990). Evidence of statutory violations is admissible on the issue of reasonable care. The harm that occurred must be of the type that the statute was designed to prevent. St. Germaine v. Pendergast, 411 Mass. 615, 584 N.E.2d 611 (1992).

The HAMP program guidelines are, as a matter of law, the industry standard for the residential mortgage servicing industry:

> STANDARD INDUSTRY PRACTICE.—The qualified loss mitigation plan guidelines [i.e., HAMP] issued by the Secretary of the Treasury under the Emergency Economic Stabilization Act of 2008 shall constitute **standard industry practice** for purposes of all Federal and State laws.

Helping Families Save Their Homes Act of 2009, Pub. L. No. 111-22 (2009), § 201 (emphasis added).

Onewest may contend that it owes no common-law or statutory duty to the Plaintiff under the Helping Families Save Their Homes Act of 2009, § 201 ("HFSTHA"). But HFSTHA explicitly creates a standard of care "for purposes of all State and Federal Law." Id.  If Onewest would have the Court repeal HFSTHA § 201, the appropriate avenue is through the legislature, not through this Court.

An industry standard is evidence of a duty of care. "[T]he district court had not erred in relying on testimony based on industry standards, which indicated fulfillment of the … duty." Mark Morehead v. Atkinson-Kiewit, J/V, 75 F.3d 736, 742 (1st Cir. 1996).

Even the absence of an explicit industry standard is not conclusive as to whether negligence exists. Torre v. Harris-Seybold Co., 9 Mass. App. Ct. 660, 677, 404 N.E.2d 96, 108 (1980).

The industry standard under HFSTHA requires that Onewest should consider the Plaintiff for a reasonable loan modification prior to foreclosing.

The existence of a duty of care is a question of law for the Court. Brown v. United States, 514 F. Supp. 2d 146, 152 (D. Mass. 2007) aff'd, 557 F.3d 1 (1st Cir. 2009). When interpreting a statute such as HFSTHA, "a court should always turn to one cardinal canon before all others. ... [C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). Indeed, "when the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" Id. at 254. Here, the words of HFSTHA state that there is a duty of care imposed by statute on Onewest with regard to mortgage servicing to not foreclose unnecessarily when reasonable repayment arrangements can be worked out with the homeowner.

A claim for negligence based on a statutory or regulatory violation may stand where there is no private cause of action under that statute or regulation. See Practico v. Portland Terminal Co., 783 F.2d 255, 265 (1st Cir. 1985) (finding that plaintiffs could bring a negligence per se claim based on a violation of Occupational Safety and Health Act even though the statute did not provide a private cause of action); Sorenson v. H & R Block, Inc., No. 99-10268-DPW, 2002 WL 31194868 at *10 (D. Mass. Aug. 27, 2002) aff'd, 107 F. App'x. 227 (1st Cir. 2004) ("Nevertheless, I recognize that federal law does not bar a state from treating 'federal statutes [as giving rise to] a standard of conduct which, if broken, would give rise to an action for common-law negligence.'") (quoting Hofbauer v. Northwestern National Bank of Rochester, 700 F.2d 1197, 1201 (8th Cir.1983)).

For a defendant's negligent violation of a statute to be actionable, it must be intended to prevent the type of harm the statute was intended to prevent. St. Germaine v. Pendergast, 411 Mass. 615, 584 N.E. 2d 611 (1992). Here, Plaintiff's claim satisfies this requirement because HFSTHA was intended to help families save their homes from foreclosure. See, e.g., Title I of HFSTHA, entitled "Prevention of Mortgage Foreclosures," § 101 (stating "mortgagees shall engage in loss mitigation actions for the purpose of providing an alternative to foreclosure ...."); HFSTHA § 201 (stating "CONGRESSIONAL FINDINGS.—Congress finds the following: (1) Increasing numbers of mortgage foreclosures are not only depriving many Americans of their homes, but are also destabilizing property values and negatively affecting State and local economies as well as the national economy ....").

2. **Breach of Fiduciary Duty**

A court will impose a fiduciary duty where the plaintiff reposes trust and confidence in the defendant, and the defendant knows of the plaintiff's reliance on him. See Broomfield v. Kosow, 349 Mass. 749, 754-758 (1965) ("The catalyst in such a change is the defendant's knowledge of the plaintiff's reliance upon him"). Plaintiff's verified statements in her Affidavit meet the requirements for breach of fiduciary duty. See also Slowey v. Flagstar Mortgage Corp., No. 10-11891-RGS (D. Mass. Mar. 15, 2011) (allowing homeowner's claim for breach of fiduciary duty to withstand dismissal based on homeowner's allegation that homeowner applied for loan modification at request of bank).

3. **Equity**

There are also equitable grounds for the Court to restrain the foreclosure, since foreclosure is an equitable action and "[He] who comes into equity must come with clean hands." Fidelity Mgmt. & Research Co. v. Ostrander, 40 Mass. App. Ct. 195, 200, 662 N.E.2d 699 (1996), quoting United States v. Perez-Torres, 15 F.3d 403, 407 (5th Cir.),

cert. denied, 513 US. 840, 115 S. Ct. 125, 130 L.Ed.2d 69 (1994). Foreclosure is an equitable remedy. "[I]t is fully settled that jurisdiction in equity does exist to entertain such suits where special facts call for equitable relief." Lynn Inst. for Sav. v. Taff, 50 N.E.2d 203 (Mass. 1943); Old Colony Trust Co. v. Great White Spirit Co., 178 Mass. 92, 94, 95, 59 N.E. 673 (1901); Hoffman v. Charlestown Five Cents Savings Bank, 231 Mass. 324, 329, 121 N.E. 815; John Hancock Mutual Life Ins. Co. v. Lester, 234 Mass. 559, 561, 125 N.E. 594. "This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 814, 65 S. Ct. 993, 89 L.Ed. 1381 (1945).

Here, where the loan modification application was wrongfully denied, Plaintiff has shown a likelihood of success on the merits of the claims.

**B.    Irreparable Harm**

Real property is inherently unique and its sale is almost always irreparable harm. "It is well-settled law in this Commonwealth that real property is unique and that money damages will often be inadequate to redress a deprivation of an interest in land." Greenfield Country Estates Tenants Ass'n, Inc. v. Deep, 423 Mass. 81, 88, 666 N.E.2d 988 (1996). By this standard, if defendants deprive the Plaintiff of title to her home through a foreclosure auction, then Plaintiff will be permanently deprived of title to her real property, causing the damage that is irreparable.

**C.    Balancing of Hardships**

Any harm that defendants might suffer is at most negligible, since only the status quo will be maintained. In contrast, the harm to the Plaintiff is, as described above, irreparable. They will lose title to their home, causing damage that they will be unable to undo and that

is not adequately compensable at law through money damages, real property being inherently unique.

**D.     Public Interest**

The relief the Plaintiff now request, i.e., injunctive relief to restrain the sale of their home while this matter is litigated, would promote the public interest because there is a public interest in ensuring that homeowners do not lose their homes unnecessarily. The Massachusetts Attorney General has emphasized that meaningful loan modifications are the cornerstone in addressing the mortgage foreclosure crisis, but that inadequate staffing by the banks has led to ineffective management of call volumes, poor customer service and ultimately in many instances, deficient loan modifications or none at all.[1] The U.S. Congress has also stated a clear national policy of foreclosure prevention. See also The Helping Families Save Their Homes Act of 2009, Pub. L. 111-12, § 201, 123 Stat. 1639 (stating "Increasing numbers of mortgage foreclosures are not only depriving many Americans of their homes, but are also destabilizing property values and negatively affecting State and local economies as well as the national economy"); An Act Relative to Mortgage Foreclosures, Chapter 258 of the Acts of 2010 (mandating that before banks can foreclose, they must show that they engaged in a good-faith effort to negotiate a "commercially reasonable alternative to foreclosure.").

## IV. Conclusion

For the foregoing reasons, the foreclosure should be enjoined.

---

[1] See Testimony of Massachusetts Attorney General Martha Coakley, Cmte. on Fin. Svcs. Subcmte. on Housing and Community Opportunity, at 7 (May 6, 2009), available at http://www.house.gov/apps/list/hearing/financialsvcs_dem/testimony_-_ma_ag_coakley.pdf.

        Respectfully submitted,

        Plaintiff,
        By counsel,

        */s/ Josef C. Culik*
        Josef C. Culik (BBO #672665)
        Culik Law P.C.
        100 Cummings Center
        Suite 107K
        Beverly, MA 01915
        978-910-0248
        978-910-0247 Fax
        josef@culiklaw.com

April 18, 2011